UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARINE WATERS O/B/O E.W., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br><br> Defendant. | NO. EDCV 07-1281 AGR <br><br><br> MEMORANDUM OPINION AND ORDER |

Carine Waters filed this action on October 12, 2007, on behalf of her son E.W.[1] At the same time, the Court granted Waters' application to be appointed guardian ad litem for E.W. (Dkt. No. 8.) Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on November 1 and December 13, 2007. On June 19, 2008, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

---

[1] The Court will refer to Carine Waters as Waters and to her son as E.W.

Having reviewed the entire file, the Court affirms the Commissioner's decision.

## I.

## **PROCEDURAL BACKGROUND**

On October 29, 2004, an application for supplemental security income benefits was filed on behalf of E.W. A.R. 11. The application was denied initially and upon reconsideration. *Id.* The Administrative Law Judge ("ALJ") conducted a hearing on November 8, 2006, at which Waters and a medical expert testified. A.R. 284-294. On January 9, 2007, the ALJ issued a decision denying benefits. A.R. 8-21. The Appeals Council denied E.W.'s request for review. A.R. 4-6.

This lawsuit followed.

## II.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///

///

# III.

# DISCUSSION

## A.  Child Definition of Disability

"An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(C)(i).[2] An impairment is "marked and severe" if it meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix I. 20 C.F.R. § 416.924(d)(1). A claimant "meets" a listed impairment if the claimant's impairment matches the listed impairment. *Id.* A claimant "medically equals" the listed impairment by demonstrating medical findings that are of equal medical significance to the listed impairment. 20 C.F.R. § 416.926(b).

A claimant "functionally equals" a listed impairment by showing either a marked limitation in two functional domains (out of six) or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a); *See Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1004 (9th Cir. 2006). The six domains are acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i-vi). A marked limitation is more than moderate and less than extreme, and occurs when an impairment(s) "interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An extreme limitation occurs when an impairment(s) "interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

---

[2] "[N]o individual under the age of 18 who engages in substantial gainful activity . . . may be considered to be disabled." 42 U.S.C. § 1382c(C)(ii).

### B. The ALJ's Findings

E.W. was born on July 21, 2004. A.R. 14. He had severe impairments of mild cerebral palsy and developmental delay. *Id.* E.W. did not meet, equal, or functionally equal a listing. *Id.* With respect to the six domains, E.W. had less than marked limitations in acquiring and using information, no limitation in attending and completing tasks, no limitation in interacting and relating with others, less than marked limitations in moving about and manipulating objects, less than marked limitations in caring for himself, and less than marked limitations in his health and physical well-being. A.R. 15-20.

### C. Plaintiff's Testimony and Questionnaire

Waters argues that the ALJ did not consider lay testimony and questionnaires. JS 4.

"'If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness.'" *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056.

Waters does not explain in what way the lay testimony/statements contradict any of the ALJ's findings. She does not connect the lay observations to any of the six functional domains at issue. Waters has not demonstrated that the ALJ discounted the oral or written lay statements.

On November 12, 2004, when E.W. was three months old, Waters completed a Function Report. A.R. 64-68. On March 17, 2005, when E.W. was almost eight months old, Waters completed a Function Report. A.R. 85-89. She stated that E.W. had been given morphine while in her womb at about three

4

months.[3]  As a result, he has "withdrawals," that include screaming, pulling out his hair, and pulling out the hair of others.  His parents have to give him medication so he can sleep, and the medication doesn't always work.  The doctor has decreased the amount of opium E.W. takes,[4] and the withdrawal symptoms have therefore gotten worse.  According to Waters, it requires two people to take care of Elijah.  When they give him opium, "he daze in and out," but when the medication wears off, "its (sic) pure trouble."  A.R. 88-89.[5]

On November 8, 2006, at the hearing, when E.W. was a little over 2 years and 3 months old, Waters testified that E.W. was having "muscle spasms in his feet and the toes curling on top of one another, and he turns his feet in."  A.R. 288.  She testified that "when he's walking he will  – if it starts happening, he will drop right then and there, and complain of the pain in his foot, and I have to stop and massage it."  A.R. 288-289.  She testified that E.W. "tightens up his fists really tight, and he's squeezing like he's trying to take control. . . . [H]e does that a lot.  And then he attack.  He'll scream and then he'll go for your face."  A.R. 288.

---

[3]  E.W. was born with neonatal abstinence syndrome because of "opiate exposure in utero (mother had chronic pancreatitis and was taking large amounts of MS contin [morphine]."  A.R. 109.  Thus, E.W. "became addicted" to the pain medication before he was born and had to be slowly weaned from the effects of his morphine addiction.  A.R. 140.

[4]  On February 25, 2005, when E.W. was seven months old, Dr. Luke, a treating physician, advised Waters that E.W. "does not need any more tincture of opium."  A.R. 154.  Dr. Luke acknowledged that Waters "still hesitates to do so."  *Id.*  The records indicate that, by 2006, E.W. was no longer on that medication.  A.R. 230 (1/27/06, "has stopped tincture of opium"); *see also* A.R. 222 (5/24/06).

[5]  Waters mentions statements made by her common-law husband, but does not cite to any document in the administrative record and does not describe the substance of any of his statements.  There is a disability report that states E.W. "has been going thru withdrawals - shaking and screeming."  A.R. 90.  Even assuming this report is from Waters' common-law husband, it is cumulative and does not alter the analysis.  *See Zerba v. Comm'r of Social Security Administration*, 279 Fed. Appx. 438, 440 (9th Cir. 2008) (failure to address husband's cumulative lay testimony is harmless error); *Rohrer v. Astrue*, 279 Fed. Appx. 437, 437 (9th Cir. 2008) (cumulative questionnaire).

In her reply, Waters argues that her descriptions of foot cramps, making fists, screaming and going for a parent's face "may have an etiology completely separate and distinct from cerebral palsy." JS 8-9. Waters' argument is not supported by any citation to the administrative record and is speculative. E.W. was diagnosed with mild cerebral palsy, with greater involvement of the lower extremities than the upper extremities. A.R. 224; *see also* A.R. 255. In the medical records dated near Waters' March 2005 function report, it was noted that E.W. keeps his hands in fists. A.R. 141. On May 24, 2006, Waters reported that E.W. "cries and screams in the middle of the night sometimes and requires some comforting." A.R. 223. Moreover, Waters concedes that cerebral palsy "affects muscle movement" and may cause "stiff or tight muscles and exaggerated reflexes (spasticity)." JS 8 n.3.

Accordingly, the ALJ did not err. Any error was harmless, as no reasonable ALJ, even when fully crediting the lay testimony/statements, could have reached a different disability determination under the applicable legal standards. *See Stout*, 454 F.3d at 1056.

**D.    E.W.'s Medications**

Waters argues that the ALJ failed to consider the side effects of E.W.'s medications and the impact the side effects could have on E.W.'s ability to obtain and sustain full-time competitive employment. JS 10. For a toddler, the issue of ability to sustain full-time competitive employment is irrelevant. Waters does not connect her argument about side effects to any of the six functional domains at issue.

Waters relies on a Disability Report Appeal form completed on May 16, 2005. A.R. 90-96. In Section 2 of the form, it identifies the following change in E.W.'s condition: "has been going thru withdrawals – shaking and screeming (sic)." A.R. 90. The date of the change in condition was December 15, 2004, when E.W. would have been almost four months old. *Id.* According to the form,

E.W. was prescribed Phenobarbital and opium, the side effects of which included constipation, sensitivity to light, headaches, dehydration, and sleepiness.  A.R. 93.

According to the medical records, as of December 22, 2004, when E.W. was five months old, he was no longer prescribed Phenobarbital.  *Compare* A.R. 178 (10/15/04 exam showing prescription of Phenobarbital *with* 168 (12/22/04 exam showing no prescription of Phenobarbital); *see also* A.R. 153 (2/25/05 exam ("Lately he was off the phenobarbital and currently he is only on minute amount of tincture of opium").  E.W. was also weaned off of the opium.  A.R. 153 (showing only tincture of opium being given as of 2/25/05); A.R. 230 (1/27/06, "has stopped tincture of opium").

In analyzing the six domains, the ALJ relied upon evaluations of E.W. during the period he was taking medications and would have been experiencing alleged side effects.  The ALJ relied upon Dr. Taylor's evaluation dated February 2, 2005, which noted that, according to Waters, E.W. was on Phenobarbitol and opium.  A.R. 15, 17, 18, 141.  The ALJ also relied on an evaluation dated December 9, 2005 (A.R. 17, A.R. 280-283) and E.W.'s treatment records during the entire time period.  A.R. 15-16.

In addition, the ALJ relies upon evaluations performed after E.W. stopped taking Phenobarbitol and opium, which would show after effects.[6]  The ALJ relied upon an evaluation dated May 4, 2006 (A.R. 15-20, A.R. 216-219), and an evaluation dated December 28, 2005.  A.R. 17, 270-278; A.R. 273 (noting no current medications).

Thus, to the extent that any error occurred, it was harmless.  As stated above, Waters does not show how any side effects would change the ALJ's findings in the six domains based on E.W.'s performance in evaluations

---

[6] As of May 2006, the ALJ noted that E.W. had regular bowel movements.  A.R. 19-20.

conducted both while E.W. was on Phenobarbitol and/or opium, and after those medications ceased. Substantial evidence supports the ALJ's decision, and any error does not negate the validity of the ALJ's findings in the six domains. *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (harmless error analysis). Stated differently, no reasonable ALJ, even when fully crediting the side effects, could have reached a different disability determination under the applicable legal standards. *See Stout*, 454 F.3d at 1056.

## IV.
## ORDER

IT IS HEREBY ORDERED that Commissioner's decision is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: October 30, 2008

_____
ALICIA G. ROSENBERG
United States Magistrate Judge